1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARY ANN BATHE, et al., | Case No. 20-CV-01574-LHK |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| UNITED STATES OF AMERICA, | Re: Dkt. No. 48, 72, 74 |
| Defendant. | |

Plaintiffs—the surviving immediate family of decedent Douglas Bathe ("Mr. Bathe")—sue the United States for Mr. Bathe's wrongful death in a motor vehicle accident. Before the Court is the United States' motion for summary judgment, ECF No. 48; the United States' *Daubert* motion, ECF No. 72; and Plaintiffs' *Daubert* motion, ECF No. 74. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS IN PART AND DENIES IN PART the United States' motion for summary judgment and DENIES without prejudice the parties' *Daubert* motions.

*United States District Court*
*Northern District of California*

Case No. 20-CV-01574-LHK
ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

# I.     BACKGROUND

## A.   Factual Background

This case arises from a fatal motor vehicle accident at Fort Hunter Liggett ("the Fort") in Monterey County, California. A Humvee driven by two U.S. Army soldiers collided with an off-road utility vehicle driven by Douglas Bathe, a Fort contractor employed by XOTech. Mr. Bathe died. Below, the Court recounts the events leading up to the fatal accident.

The accident took place on June 16, 2017. Specialist ("SPC") Devin Hicks was driving a Humvee on Fort Hunter Liggett Road ("Liggett Road") within the Fort. *See* Hicks Dep. at 17:20–25; 58:24–59:12, ECF No. 51-1. Sergeant ("SGT") Patrick S. Wahrer was Hicks's passenger and assistant driver. *See id.* at 68:7–19, ECF No. 68-1. SPC Hicks drove southbound toward his intended destination of Checkpoint Charlie. *See* Wahrer Dep. at 41:24–42:16, 86:23–87:19, ECF No. 51-1. About 0.5 miles before Checkpoint Charlie, SPC Hicks encountered a John Deere M-Gator ("Gator") also driving on Liggett Road. Gators are off-road utility vehicles designed for military use. Lovett Dep. at 60:23, ECF No. 51-1. Mr. Bathe was driving the Gator at five to 10 miles per hour. *See* Wahrer Dep. at 49:8–49:13, 51:7–51:15, 56:6–56:25. The parties dispute whether the speed limit on Liggett Road was 10 miles per hour (the limit when military personnel are present) or 25 miles per hour. *Compare* Opp'n at 11, ECF No. 67 (arguing troops were likely present because the accident "happened during the busiest summer months at the Fort"), *with* Reply at 4, ECF No. 70 (arguing there is no evidence that military personnel were present). The fact that Liggett Road is a two-lane road with traffic in two directions is undisputed. Thus, the Humvee could only pass the Gator by driving into the left lane for oncoming traffic.

At five to 10 miles per hour, the Humvee and Gator approached the paved entrance to Building 3340 Equipment Concentration Site Storage Facility ("ECS Building"), which was to the left of both vehicles. *See* Russell Dep. at 19:2–17, ECF No. 51-1. The ECS Building is not only the Fort's main storage warehouse, but also the main location where the Fort's motor vehicles are stored and repaired. *See id.* at 20:16–23. The Army marked the stretch of Liggett Road near the ECS Building as a passing area with dashed yellow lines. *See* Wahrer Dep. at 33:23–34:7. Even

2

1  so, the ECS Building is located in the Fort's cantonment area, which is the Fort's most densely

2  populated area "where most of the buildings are and [] administrative areas are." Quinones Dep. at

3  67:3–4, ECF No. 51-1; *see* Kellogg Dep. at 43:3–4, 55:2–3, 66:22–24, ECF No. 68-1. Gator

4  vehicles were often seen at the ECS Building and driving on Liggett Road. *Id.* at 68:4–14.

5      SPC Hicks tailed the Gator for about 30 yards before deciding to pass it on the left. *See*

6  Wahrer Dep. at 49:8–49:13, 51:7–51:15, 56:6–56:25. SPC Hicks turned on the Humvee's left turn

7  signal, sounded the Humvee's horn, and accelerated into the left lane for oncoming traffic. *Id.* at

8  51:9–51:15, 59:10–11, 82:12–82:17. As the Humvee passed the Gator on the left, the Gator began

9  to turn left into the ECS Building without signaling. *Id.* at 59:14–17, 67:5–67:20, 114:23–115:1,

10  116:8–116:19, 117:9–117:14, 150:9–150:10. The vehicles collided twice. *Id.* at 119:25–120:8. Mr.

11  Bathe was ejected about "three car lengths" from the Gator. Russell Dep. at 119:11. It is disputed

12  whether Mr. Bathe was wearing a seatbelt. *Compare* Opp'n at 17 (citing testimony on seatbelt

13  usage), *with* Mot. at 4 (citing lack of seatbelt markings during physical exam).

14      Several civilian and military personnel witnessed the crash and tried to provide aid. SGT

15  Wahrer and a witness, First Lieutenant Michael C. Eiring, left their vehicles to provide first aid to

16  Mr. Bathe. *See* Eiring Dep. at 70:1–22, ECF No. 51-1. Another witness, Private First Class

17  Michael Wayman, accompanied SPC Hicks away from the accident as SPC Hicks tried to regain

18  his composure. *Id.* at 701:1–22. A bystander who heard the accident, XOTech employee Angela

19  Russell, testified that she called emergency services and then asked SGT Wahrer what had

20  happened. *See* Russell Dep. at 19:12–17, 60:3–13. SGT Wahrer responded that he had told SPC

21  Hicks "no, don't do it, don't do it," but SPC Hicks had tried passing the Gator anyway. *Id.* at

22  60:11. SGT Wahrer has testified that he does not recall whether he spoke to Russell. Wahrer Dep.

23  at 55:10–16.

24      Mr. Bathe was flown to Natividad Medical Center where he was pronounced dead on June

25  17, 2017. Exh. Z, ECF No. 51-1 at 282 (medical records).

26

27

28

3

Case No. 20-CV-01574-LHK
ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

### B. Procedural History

On June 6, 2019, Mr. Bathe's widow (Mary Anne Bathe) and two sons (Brian and David Bathe) (collectively, "Plaintiffs") sued SPC Hicks, the U.S. Department of the Army, and the United States. Compl., ECF No 1. Plaintiffs brought three claims under the Federal Tort Claims Act and California law: (1) negligence; (2) wrongful death; and (3) survival action. *Id.* ¶¶ 29–62. The crux of Plaintiffs' complaint is that SPC Hicks' negligent driving in the scope of his employment killed Mr. Bathe. *Id.* ¶ 27. On August 21, 2019, the United States substituted itself as Defendant in place of SPC Hicks. ECF No. 14. On August 28, 2019, Plaintiffs voluntarily dismissed the U.S. Department of the Army from the case. ECF No. 17. Thus, the United States ("the government") is the only remaining Defendant.[1]

On November 12, 2020, the government filed the instant motion for summary judgment. ECF No. 49 ("Mot."). On December 23, 2020, Plaintiffs filed their opposition to the government's instant motion. ECF No. 67 ("Opp'n"). On December 31, 2020, the government filed its reply supporting the instant motion. ECF No. 70 ("Reply").

## II.   LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

---

[1] Although Plaintiffs argue in their Opposition that the U.S. Army inadequately trained soldiers about the California Vehicle Code, Plaintiffs failed to assert a negligent training theory in their administrative tort claim, their complaint, or their responses to the government's interrogatories. *See* Reply at 6 (collecting citations). "It 'is axiomatic that the complaint may not be amended by the briefs.'" *Doe v. Wolf*, 432 F. Supp. 3d 1200, 1215 (S.D. Cal. 2020) (quoting *Candor v. United States*, 1 F. Supp. 3d 1076, 1082 (S.D. Cal. 2014)). Moreover, Plaintiffs voluntarily dismissed the U.S. Army from the case. ECF No. 17. Thus, the Court need not reach Plaintiffs' argument on inadequate training.

Case No. 20-CV-01574-LHK
ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

party. *See id.*

The Court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id.* at 323.

For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence submitted by the nonmoving party. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## III.   DISCUSSION

The government moves for summary judgment on three grounds: (1) SPC Hicks was not negligent; (2) Mr. Bathe was negligent; and (3) Mr. Bathe's employer, XOTech, was negligent. Below, the Court analyzes each ground in turn.

### A. There is a genuine dispute of material fact as to whether SPC Hicks was negligent.

On the issue of SPC Hicks's negligence, the government first argues that SPC Hicks's passing maneuver was not negligent because it did not occur at an "intersection" under the

Case No. 20-CV-01574-LHK
ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    California Vehicle Code. Reply at 2–3. The government then argues that even if SPC Hicks passed

2    Mr. Bathe at an "intersection," the government has rebutted the resulting presumption of

3    negligence with undisputed facts. *Id.* at 4.

4         As explained below, the Court disagrees with both arguments. There is a genuine dispute

5    of material fact as to (1) whether SPC Hicks tried to pass at an "intersection"; and (2) whether

6    SPC Hicks's decision to pass was reasonable.

7         **1. There is a genuine dispute of material fact as to whether SPC Hicks tried passing**
          **Mr. Bathe at an "intersection."**

8

9         As detailed above, the fatal accident occurred when SPC Hicks tried to pass Mr. Bathe on

10   the stretch of Liggett Road in front of the ECS Building's entrance. *See* Section I-A, *supra*

11   (detailing accident). At summary judgment, the parties' main dispute is whether that stretch of

12   Liggett Road—which joins with the ECS Building's entrance—is an "intersection" as defined by

13   the California Vehicle Code. *Compare* Reply at 2–4 (arguing no), *with* Opp'n at 6–10 (arguing

14   yes). The parties agree that if SPC Hicks tried to pass at an "intersection," the government would

15   bear a rebuttable presumption of negligence. Reply at 4.[2] By contrast, if SPC Hicks tried to pass at

16   a non-intersection, the government argues that it is entitled to summary judgment on SPC Hicks's

17   negligence. Thus, the government's liability may depend on whether SPC Hicks tried passing Mr.

18   Bathe at an "intersection."

19        Whether SPC Hicks tried passing at an "intersection" turns on whether the ECS Building's

20   entrance meets the definition of another statutory term: "highway." The area where two

21   "highways" meet is an "intersection." Specifically, the definition of "intersection" incorporates the

22   term "highway" as follows:

23        An "intersection" is the area embraced within the prolongation of the lateral curb
          lines, or, if none, then the lateral boundary lines of the roadways, of [1] *two*

24        *highways* which join one another at approximately right angles or [2] the area

25   _____

26   [2] Specifically, if SPC Hicks tried passing at an "intersection," he violated California Vehicle Code
     § 21752(d). Section 21752(d) provides that "[n]o vehicle shall be driven to the left side of the

27   roadway . . . [w]hen approaching within 100 feet of or when traversing any intersection."

28
     Case No. 20-CV-01574-LHK
     ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

within which vehicles traveling upon *different highways* joining at any other angle
may come in conflict.

Cal. Veh. Code § 365 (emphasis added). Thus, whether an area is an "intersection" largely turns
on the definition of "highway."

The definition of "highway" is broad. A "'[h]ighway' is a way or place of *whatever nature*,
publicly maintained and *open to the use of the public* for purposes of vehicular travel. Highway
includes street." *Id.* § 360 (emphasis added).

The parties agree that Liggett Road is a "highway." The only dispute is whether the
entrance to the ECS Building is also a "highway." *See, e.g.*, Reply at 3 (disputing only the ECS
Building entrance). Specifically, the parties dispute whether the ECS Building's entrance is "open
to the use of the public for purposes of vehicular travel." Cal. Veh. Code § 360; *see* Opp'n at 7
(characterizing dispute). If the ECS Building's entrance is "open to the use of the public," then the
entrance is a "highway." If the ECS Building's entrance is a highway, then SPC Hicks tried to
pass Mr. Bathe at an "intersection."

Ninth Circuit precedent shows that there is a genuine dispute of material fact as to whether
the ECS Building's entrance is "open to the use of the public" and thus a "highway." Under Ninth
Circuit precedent, the specific dispute is whether the "general body of the people of [the Fort],
who work or reside there, have a general right to use the" ECS Building's entrance. *United States
v. Kiliz*, 694 F.2d 628, 630 (9th Cir. 1982) (quoting *United States v. Barner*, 195 F. Supp. 103
(N.D. Cal. 1961)). On this record, it is unclear whether most people of the Fort have a right to use
the ECS Building's entrance. Thus, there is a genuine dispute as to whether the ECS Building's
entrance is a "highway."

The Ninth Circuit defined what constitutes a "highway" on a military base in *United States
v. Kiliz*. There, the Ninth Circuit approvingly quoted a case from this district with facts closely
analogous to those here. In that case, *United States v. Barner*, the defendant also argued that the
roadways on a military base (McClellan Air Force Base) "were not 'highways' because access to
them was limited." *Kiliz*, 694 F.2d at 630 (discussing *Barner*, 195 F. Supp. 103).

7

Case No. 20-CV-01574-LHK
ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR SUMMARY
JUDGMENT

The *Barner* Court—and by extension the Ninth Circuit—disagreed. The *Barner* Court held that the roadways on the base were "highways" under the same statute at issue here: California Vehicle Code § 360. *Id.* at 631. The *Barner* Court held that the base's roadways were "open to the use of the public" because the relevant "public" comprised the "general body of the people of McClellan Air Force Base, who work or reside there." *Barner*, 195 F. Supp. at 105 (quoting Webster's New International Dictionary, Second ed., Unabridged (1955)). Specifically, the district court offered the following reasoning, which the Ninth Circuit quoted approvingly in its entirety:

> The roadways on McClellan Air Force Base . . . are open to the public, subject only to reasonable restrictions and regulations. Certain members of the general body of the people of the State of California, who have no business upon the base, may be barred from using the roadways in the industrial portion of the base. However, *the general body of the people of McClellan Air Force Base, who work or reside there, have a general right to use the roadways*, subject to reasonable restrictions and regulations. These roadways clearly come within the definition of "highway" when a realistic application of the term is made.

*Kiliz*, 694 F.2d at 630–31 (emphasis added) (quoting *Barner*, 195 F. Supp. at 105). Thus, the roads on the military base were "highways" because the "general body of the people of [the base]" had a right to use the roads. *Id.* The same rule holds true here. If the "general body of the people of [the Fort]" have a general right to use the ECS Building's entrance, then the entrance is a "highway" under Cal. Veh. Code § 360.

In the instant case, the parties cite opposing facts as to who may use the ECS Building's entrance. Plaintiffs cite two deponents who suggest that many people at the Fort (though not necessarily *most* people) use the ECS Building's entrance. The first deponent is Gennaro Messina, a Supervisory Engineer Technician responsible for the construction and maintenance of roads in the Fort. Opp'n at 8. Messina testified that there is no difference between "public accessibility to Fort Hunter Liggett Road and the first 50 feet of" the ECS Building's entrance. Messina Dep. at 84:17–24, ECF No. 68-1. Thus, theoretically, someone in the cantonment area "could travel on Liggett Road as easily as" the ECS Building's entrance. *Id.*

Plaintiffs' other cited deponent is Emory Stanley Wilson, the Rule 30(b)(6) deponent for

8

Mr. Bathe's employer XOTech. Opp'n at 8. Wilson testified that the ECS Building was open to XOTech workers and other government workers who worked in the ECS Building. Wilson Dep. at 106:12–14, ECF No. 68-1. Wilson also testified that the ECS Building lacked guards or locks. *Id.* at 106:3–9. This testimony suggests that "the general body of the people of [the Fort], who work or reside there, have a general right to use the [ECS Building's entrance]." *Kiliz*, 694 F.2d at 630–31 (quoting *Barner*, 195 F. Supp. at 105).

The government responds with three contrary facts which suggest that the ECS Building's entrance is more restricted than other areas of the Fort. First, only "people who have business in th[e] [ECS] [B]uilding" use its entrance. Reply at 2. Second, the ECS Building's entrance "does not have a street name and does not appear on a map of [the Fort]." *Id.* at 2–3. Third, during military exercises, a gate restricts the ECS Building's entrance to "units coming in and picking up their equipment." *Id.* (quoting Russell Dep. at 86:4–16).

The parties' competing facts raise a genuine dispute of material fact as to whether the ECS Building's entrance is a "highway" under Ninth Circuit precedent. This dispute determines whether the government bears a rebuttable presumption of negligence. Specifically, if the ECS Building's entrance is a "highway," two conclusions follow. First, SPC Hicks tried to pass Mr. Bathe at the highway "intersection." Second, because passing at an "intersection" violates the California Vehicle Code, the government bears a rebuttable presumption of negligence for SPC Hicks's fatal attempt to pass Mr. Bathe.

Accordingly, the Court DENIES the government's motion for summary judgment as to whether SPC Hicks tried to pass Mr. Bathe at an "intersection."

**2. There is a genuine dispute of material fact as to whether SPC Hicks's decision to pass was reasonable.**

The government also argues that even if SPC Hicks tried to pass Mr. Bathe at an "intersection," the government can rebut the resulting presumption of negligence. Reply at 3. The Court disagrees. There is a genuine dispute of material fact as to whether SPC Hicks's decision to pass was reasonable. In particular, one contested piece of testimony suggests that SPC Hicks may

9

United States District Court
Northern District of California

1    have been negligent.

2         The testimony at issue came from witness Angela Russell, an XOTech colleague of Mr.

3    Bathe's who worked at the ECS Building and attended daily meetings with him. *See* Russell Dep.

4    at 114:1–14. Russell spoke to SGT Wahrer minutes after the accident. Russell was able to speak to

5    SGT Wahrer because she was in the ECS Building's parking lot and heard the accident. *Id.* at

6    19:12–17. Russell testified that after she called emergency services at the scene of the accident,

7    she asked SGT Wahrer "what happened." *Id.* at 60:3–8. SGT Wahrer allegedly responded that he

8    "had told the driver [SPC Hicks], *no, don't do it, don't do it*. And then [SPC Hicks] proceeded to

9    go try to pass [Mr. Bathe] any way and the accident happened." *Id.* at 60:10–13 (emphasis added).

10   Russell's testimony emphasized the exact words that SGT Wahrer exclaimed to her: "Don't do it.

11   The words he said to me was, don't do it." *Id.* at 60:24–25.

12        If SGT Wahrer had in fact told SPC Hicks "don't do it" before SPC Hicks tried to pass Mr.

13   Bathe, that would be "compelling evidence" that SPC Hicks had been negligent, if not reckless.

14   Opp'n at 11; *see generally Fenimore v. Regents of Univ. of California*, 245 Cal. App. 4th 1339,

15   1347–48 (2016) (distinguishing negligence and recklessness). The government does not dispute

16   this. Reply at 5. The government instead argues that Russell's testimony is not only inadmissible

17   hearsay, but also too implausible to justify a trial. *Id.* at 4–5.

18        The Court disagrees with both arguments. To start, Russell's testimony is admissible under

19   the hearsay exception for excited utterances. Federal Rule of Evidence 803(2) "excludes from the

20   rule against hearsay statements 'relating to a startling event or condition, made while the declarant

21   was under the stress of excitement that it caused.'" *United States v. Jones*, 739 F. App'x 376, 380

22   (9th Cir. 2018) (quoting Fed. R. Evid. 803(2)). At the time SGT Wahrer allegedly spoke to

23   Russell, SGT Wahrer was under the stress of a fatal car accident that had occurred minutes before.

24   *See* Russell Dep. 60:3–5 (testifying that emergency services had not yet arrived).

25        Indeed, at his deposition more than three years after the accident, SGT Wahrer recounted

26   the stress of the accident in vivid detail. *See* Wahrer Dep. at 51:13–52:9. (Aug. 10, 2020

27                                        10

United States District Court
Northern District of California

deposition). SGT Wahrer testified that he was "disoriented"; heard SPC Hicks "screaming kind of uncontrollably"; watched Mr. Bathe's eyes roll back into his head; and tried frantically to keep Mr. Bathe conscious:

> As we were passing that's -- that's when the civilian contractor [Mr. Bathe] just turned into us literally. And I yelled at the top of my lungs. Yelled -- yelled outside, yelled inside. . . .
>
> We hit the guy [Mr. Bathe], went up and over. Our heads went down, our heads came back up. That's when I noticed him and I thought we're going to hit him. And Specialist Hicks, you know, maneuvered around and we went to tailspin, came to a stop. You know, little disoriented because, you know, you're bouncing around in a Humvee. . . . Checked myself, checked Specialist Hicks, noticed the man out on -- on the ground laying down, jumped out of the vehicle, took off running over towards him. . . . He was unresponsive, started yelling at him. Specialist Hicks was pretty emotional. I remember him screaming kind of  uncontrollably and it was distracting. . . .
>
> I noticed that there was a thing above [Mr. Bathe's] eye and his finger looked like it was fractured. It was pretty -- pretty scraped up, pretty good. We -- I kept calling out to him. His eyes started going back and I patted him on his leg, sir, stay with me. Sir, stay with me. He tried to get up. I was, like, no, no. You're good, you're good. Just talk to me. What's going on, you know, what's your name? Do you have any kids? Tell me about your kids? Tell me --

*Id.* SGT Wahrer's testimony was apparently so upsetting that the government's counsel instructed SGT Wahrer to stop speaking, and Plaintiff's counsel asked SGT Wahrer if he wanted to take a break. *Id.* at 53:5–9.

The government's only argument against the "excited utterance" hearsay exception is that "SGT Wahrer's statement was allegedly made after the accident occurred." Reply at 5. Yet SGT Wahrer allegedly shared his "don't do it" utterance with Russell only minutes after being personally involved in a traumatic accident. Federal and California courts alike have applied the "excited utterance" hearsay exception in less compelling circumstances. For instance, in a wrongful death action arising from a truck accident, the D.C. Circuit applied the exception to a statement made by a possible witness 15 to 45 minutes after the accident. *See Hilyer v. Howat Concrete Co.*, 578 F.2d 422, 426 & n.7 (D.C. Cir. 1978); *see also, e.g., Maggard v. Ford Motor*

11

*Co.*, 320 F. App'x 367, 373 (6th Cir. 2009) (citing four court of appeals cases that applied the excited utterance exception hours after a stressful incident). Similarly, in a vehicular manslaughter case, a California Court of Appeal applied California's excited utterance exception to a statement made by a mere bystander five minutes after the accident. *See People v. French*, No. B156025, 2003 WL 1904388, at *7 (Cal. Ct. App. Apr. 21, 2003) (unpublished) (applying Cal. Evid. Code § 1240). Given this weight of authority, SGT Wahrer's "don't do it" comments qualify for the "excited utterance" hearsay exception. Fed. R. Evid. 803(2).

The government's other argument is that Russell's testimony is too implausible to create a genuine dispute of material fact. This argument is also unpersuasive. It is a "bare assertion in a brief with no supporting argument." *E.g.*, *Parrish v. Mabus*, 679 F. App'x 620, 621 (9th Cir. 2017). Specifically, the government asserts in one conclusory sentence without any citation to the record or legal authority: "It is [] implausible to believe that SPC Hicks would have disobeyed a direct order by a superior officer." Reply at 5. This one sentence cannot support summary judgment for the government. In fact, the case law offers several examples of military personnel driving in a way that violates orders. *See, e.g.*, *United States v. Williams*, No. 201600091, 2017 WL 4051587, at *2 (N-M. Ct. Crim. App. Sept. 12, 2017) (drunk driving and fleeing from military police); *United States v. Lawson*, 36 M.J. 415, 417 (C.M.A. 1993) (violating captain's order and warnings by two subordinates). Thus, the Court DENIES the government's motion for summary judgment as to whether SPC Hick's decision to pass was reasonable.

In sum, Russell's testimony shows that there is a genuine dispute of material fact as to whether SPC Hicks was negligent. Accordingly, the Court DENIES the government's motion for summary judgment as to whether SPC Hicks was negligent.

**B. There is a genuine dispute of material fact as to whether Mr. Bathe wore a seatbelt, but there is no genuine dispute of material fact as to whether Mr. Bathe failed to look and signal before he turned left.**

The Court now turns to the government's arguments that Mr. Bathe and his employer XOTech were negligent. Under California law, the factfinder apportions fault to all negligent

Case No. 20-CV-01574-LHK
ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

parties. *See, e.g.*, *Sagadin v. Ripper*, 221 Cal. Rptr. 675, 691–93 (Ct. App. 1985) (summarizing comparative negligence). The government thus asks the Court to find Mr. Bathe and XOTech negligent as a matter of law, even if there is a triable issue of fact as to whether SPC Hicks was also negligent. Mot. at 15.

As to Mr. Bathe, the government argues that Mr. Bathe was negligent in three ways. Specifically, the government argues that Mr. Bathe (1) failed to look before he turned left; (2) failed to signal his left turn; and (3) failed to fasten the Gator's lap belt. The Court agrees with the government's first two arguments, but not the third. The Court addresses each argument in turn.

As to the first two arguments, it is undisputed that Mr. Bathe did not look or signal before turning left. SGT Wahrer testified that Mr. Bathe "never gave any inkling whatsoever that he was turning." Wahrer Dep. at 116:15–16. SPC Hicks similarly testified that Mr. Bathe did not signal before turning. Hicks Dep. at 155:3–8. Plaintiffs' only response to this undisputed sworn testimony is that SGT Wahrer and SPC Hicks are "biased witnesses." Opp'n at 1; *see id.* at 15–16 (failing to cite contrary evidence about looking or signaling). This conclusory attack on the soldiers' sworn testimony, without more, is not enough to avoid summary judgment. *See, e.g.*, *Smalls v. Cty. of Suffolk*, No. 14-CV-4889, 2019 WL 4038742, at *14 (E.D.N.Y. Aug. 27, 2019) (collecting court of appeals cases). Thus, the Court GRANTS the government's motion for summary judgment as to Mr. Bathe's failure to look and signal before he turned left.

However, there is a genuine dispute of material fact as to whether Mr. Bathe wore a seatbelt at the time of the accident. Fact testimony alone establishes this dispute. Plaintiffs cite testimony that Mr. Bathe customarily fastened the Gator's lap belt. Russell testified that in all the many times she had seen Mr. Bathe driving a Gator at the Fort, she "did not ever see him not wearing a seat belt." Russell Dep. at 40:22–41:1. Plaintiff Brian Bathe, Mr. Bathe's son, similarly testified that his father would "typically wear a seat belt" when driving. Brian Bathe Dep. at 48:4–5.

Case No. 20-CV-01574-LHK
ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

The government responds with contrary facts suggesting that Mr. Bathe failed to fasten the Gator's lap belt at the time of the accident. Mot. at 16. Specifically, Mr. Bathe's medical records state his abdomen bore "no seatbelt sign." Exh. Z, ECF No. 51-1 at 281 (medical records). Moreover, Russell testified that at the accident site, it appeared that the rollover accident had ejected Mr. Bathe about "three car lengths" away from the Gator. Russell Dep. at 119:5–12.

These competing facts raise a genuine dispute of material fact as to whether Mr. Bathe wore a seatbelt at the time of the accident. Thus, the Court DENIES the government's motion for summary judgment as to whether Mr. Bathe wore a seatbelt at the time of the accident.

In sum, the Court GRANTS the government's motion for summary judgment as to whether Mr. Bathe failed to look and signal before he turned left. The Court DENIES the government's motion for summary judgment as to whether Mr. Bathe wore a seatbelt at the time of the accident.

**C. It is undisputed that XOTech was negligent.**

The government also asks the Court to find XOTech negligent as a matter of law. Mot. at 16. The government recounts many undisputed facts about XOTech's conduct. Reply at 7. On October 18, 2017, the Department of Labor ("DOL") cited XOTech for failing to provide "a place of employment which w[as] free from recognized hazards . . . in that an employee was permitted to operate an off-road John Deere Utility Vehicle M-Gator on roadways within the military installation . . . without the use of a seatbelt." Exh. V, ECF No. 51-1 at 273–74 (DOL citation of XOTech). The DOL fined XOTech a total of $25,350 for the two violations and required XOTech to develop a training program that "prohibit[ed] employees from operating off-road vehicles on public roads" and required seatbelt use. *Id.* XOTech did not contest the merits of the citation. *See id.* at 276–77 (XOTech letter to DOL). Although XOTech sought a reduction in the DOL fine, XOTech wrote to the DOL that it "absolutely underst[oo]d that XOtech is responsible for our employee's welfare and safety, we take this very seriously." *Id.* at 277. Ultimately, XOTech banned its contractors from driving Gators and "paid almost all of the $25,350" fine. Wilson Dep. at 66:10–12, 73:18–23, ECF No. 51-1 (XOTech's Rule 30(b)(6) deposition).

14

1    Plaintiffs do not dispute that XOTech was negligent. Indeed, Plaintiffs' Opposition only

2    mentions XOTech once, and only to note that Mr. Bathe was "an employee of XO[]Tech." Opp'n

3    at 2. Accordingly, the Court GRANTS the government's motion for summary judgment as to

4    XOTech's negligence.

5    **D.  The Court denies the parties' *Daubert* Motions without prejudice.**

6    The parties also filed *Daubert* motions. The government filed its *Daubert* motion against

7    two of Plaintiffs' experts on December 31, 2020. ECF No. 72. Specifically, the government seeks

8    to preclude Thomas Zweber, M.D., from opining on the biomechanics of Mr. Bathe's injuries. Id.

9    at 1. The government also seeks to preclude Mr. Eugene Vanderpol from opining on (1) the

10   biomechanics of Mr. Bathe's injuries; and (2) the California Vehicle Code. Id.

11   Plaintiffs filed their *Daubert* motion against one of the government's experts on January 7,

12   2021. ECF No. 74. Specifically, Plaintiffs seek to strike the opinions of Louis Y. Chang, Ph.D.,

13   who opines on (1) the biomechanics of Mr. Bathe's injuries; and (2) whether Mr. Bathe could

14   have detected the oncoming Humvee behind the Gator. ECF No. 76 at 7.

15   In all, the parties' challenged expert opinions raise three issues: (1) the biomechanics of

16   Mr. Bathe's injuries; (2) the California Vehicle Code; and (3) whether Mr. Bathe could have

17   detected the oncoming Humvee.

18   None of the challenged expert opinions alter the Court's summary judgment analysis or

19   rulings. Thus, the Court DENIES without prejudice the parties' *Daubert* motions, ECF Nos. 72 &

20   74. Specifically, on the first issue, the Court denies the government's motion for summary

21   judgment as to whether Mr. Bathe was wearing a seatbelt on the basis of conflicting factual

22   testimony alone. The parties' competing expert testimony only underscores the fact that there is a

23   genuine dispute of material fact.

24   On the issue of the California Vehicle Code, the Court denies the government's motion for

25   summary judgment as to whether SPC Hicks was negligent because there is a genuine dispute of

26   material fact as to whether (1) the passing area was in fact an "intersection"; and (2) whether SPC

27

28   Case No. 20-CV-01574-LHK
     ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR SUMMARY
     JUDGMENT

15

United States District Court
Northern District of California

1    Hicks's decision to pass was reasonable. The Court reaches this conclusion even without
2    considering the testimony of Plaintiffs' expert, Mr. Vanderpol.

3         Finally, the Court grants the government's motion for summary judgment as to Mr.
4    Bathe's failure to look and signal before he turned left even without considering the testimony of
5    the government's expert, Dr. Chang.

6    **IV.    CONCLUSION**

7         For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the
8    government's motion for summary judgment, ECF No. 48. Specifically, the Court GRANTS the
9    government's motion for summary judgment as to whether:

10   - Mr. Bathe failed to look and signal before he turned left; and
11   - XOTech was negligent.

12   The Court DENIES the government's motion for summary judgment as to whether:

13   - SPC Hicks tried to pass Mr. Bathe at an "intersection";
14   - SPC Hicks's decision to pass was reasonable; and
15   - Mr. Bathe wore a seatbelt at the time of the accident.

16        The Court notes that California is a comparative negligence state where the victim's
17   contributory negligence does not bar recovery. *See, e.g., Sagadin*, 221 Cal. Rptr. at 691–93
18   (summarizing doctrine). Thus, based on the parties' summary judgment briefing, a trial is
19   necessary on the following five issues:

20   - Whether SPC Hicks tried to pass Mr. Bathe at an "intersection";
21   - Whether SPC Hicks's decision to pass was reasonable;
22   - Whether Mr. Bathe wore a seatbelt at the time of the accident;
23   - Apportionment of fault between the government, Mr. Bathe, and XOTech; and
24   - Damages.

25        The Court DENIES without prejudice the parties' *Daubert* motions, ECF Nos. 72 & 74.

26   **IT IS SO ORDERED.**

27

28

Case No. 20-CV-01574-LHK
ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

1

2    Dated: March 16, 2021

3    _____

4    LUCY H. KOH
     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    17

28   Case No. 20-CV-01574-LHK
     ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION FOR SUMMARY
     JUDGMENT